# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

_____

No. 08-CV-377 (JFB) (MLO)
_____

DANIELLE SHEEHY,

Plaintiff,

VERSUS

NEW CENTURY MORTGAGE CORP., ET AL.,

Defendants.

_____

**MEMORANDUM AND ORDER**
February 19, 2010
_____

JOSEPH F. BIANCO, District Judge:

Plaintiff Danielle Sheehy (hereinafter "plaintiff" or "Sheehy") brings this action against defendant Meryl Halpern, Esq. (hereinafter "Halpern") and Ralph H. Pecorale, Esq. (hereinafter "Pecorale") for fraud, breach of fiduciary duty, and violations of the New York General Business Law § 349 for alleged deceptive acts and practices, in connection with the alleged purchase by Sheehy of real property at 111 Berkley Street, Valley Stream, New York, which was entered into upon the recommendation of her mother's boyfriend, Robert Adlerstein.

Plaintiff claims that, although she believed she was simply making a real estate investment, she was unwittingly used as a straw buyer so that her personal information and credit score could be used to obtain a fraudulent mortgage for a higher value than the property was worth. More specifically, in the summer of 2006, plaintiff, a California resident, was visiting family and friends on Long Island. During the visit, her mother's "long-term boyfriend," Robert Adlerstein, told plaintiff that she should invest in residential real estate. Adlerstein promised to find a suitable investment property on Long Island, find a tenant for the property, renovate the property, sell it within six months, and split the profits with plaintiff. Adlerstein subsequently located the property in Valley Stream, and plaintiff purchased this property in October 2006. Plaintiff claims that her attorney at the closing, defendant Halpern—who was also Adlerstein's cousin—provided assurances that, among other things, Adlerstein was a co-mortgagor

with plaintiff. Plaintiff also claims that, unbeknownst to her, several fraudulent documents were executed in connection with the sale and that, again without her knowledge, Adlerstein and his business partner received over $30,000 in payments following the sale. Defendant Pecorale, an attorney, represented the lender, New Century Mortgage, in this transaction. His office prepared two of the allegedly false documents, and Pecorale himself signed the checks through which Adlerstein and his partner received their payments. Months later, plaintiff claims to have discovered that Adlerstein was not on the mortgage. Plaintiff became unable to make the payments on her own, and the property eventually went into foreclosure. She then brought this action against Adlerstein, Halpern, Pecorale, and others involved in the home purchase, asserting a variety of common law and statutory claims.[1]

Halpern and Pecorale have both moved for summary judgment on the claims asserted by plaintiff against them—common law fraud, breach of fiduciary duty, and violations of New York's consumer protection statute, N.Y. General Business Law § 349. For the reasons set forth below, the Court grants the motions in part and denies them in part. Specifically, the Court denies both defendants' motions on the fraud and breach of fiduciary duty claims. Construing the evidence most favorably to plaintiff, genuine issues of material fact exist as to whether Halpern made fraudulent statements to plaintiff and whether she, as plaintiff's attorney, breached her fiduciary duties to plaintiff. Genuine issues of material of fact also exist as to whether Pecorale aided and abetted Adlerstein's alleged fraud and breach of fiduciary duty. However, the Court grants defendants' motions on the § 349 claim because plaintiff has not produced any evidence to show that the alleged conduct was "consumer oriented."[2]

## I. Background

### A. Factual Background

The following facts are taken from the parties' depositions, declarations, exhibits, and respective Local Rule 56.1 statements of facts.[3] Upon consideration of a motion for summary judgment, the Court construes the facts in the light most favorable to the non-moving party. *See Capobianco v. City of N.Y.*, 422 F.3d 47, 50 n.1 (2d Cir. 2005). Accordingly, with regard to defendants' motions for summary judgment, the Court shall construe the facts in favor of plaintiff.

---

[1] As noted *infra*, defendant New Century Mortgage Corp. never answered the complaint. Moreover, motions for default have been granted as to defendants Adlerstein, Boone, and DeBonis. In addition, the claims against defendants America's Serving Company, Carrington Mortgage, and Shusterhoff were voluntarily dismissed by plaintiff.

[2] Defendant Pecorale also moves for summary judgment on co-defendant Halpern's cross-claims against Pecorale for contribution and indemnification. The Court concludes, as discussed *infra*, that summary judgment on the indemnification claims is warranted, but not on the contribution claim.

[3] Four separate Local Rule 56.1 statements were submitted in connection with the pending motions: one by defendant Halpern (hereinafter "Halpern 56.1"), one by defendant Pecorale (hereinafter "Pecorale 56.1"), and two by plaintiff, one in opposition to each defendant's motion (hereinafter "Pl. 56.1 (Halpern)" and "Pl. 56.1 (Pecorale)" respectively).

Moreover, unless otherwise noted, where a party's 56.1 statement is cited, that fact is undisputed or the opposing party has pointed to no evidence in the record to controvert it.

### 1. The Proposed Real Estate Transaction

In the summer of 2006, plaintiff was living in California. While visiting her family on Long Island, her mother, Maria Sheehy, and her mother's then-boyfriend, Robert Adlerstein,[4] suggested that plaintiff consider investing in real estate in New York. (Halpern 56.1 ¶¶ 1, 5, 8.) Adlerstein said he would locate a house in New York; the house would be purchased; Adlerstein would find a tenant to live in the house; he would also renovate and sell the house; and he would split the profits from the sale with plaintiff. (*Id.* ¶¶ 8, 10, 14.) Adlerstein also said that if he could not find a tenant, he would pay the mortgage and carrying costs. (*See id.* ¶ 13.) He further told plaintiff that he would supply the attorney, mortgage broker, and appraiser for the sale of the house. (*Id.* ¶ 12.) Adlerstein said he had made money doing this in the past. (*Id.* ¶ 9.) Plaintiff claims she believed this was a "risk-free investment" because she would not be required to put money down and because Adlerstein would be the "main mortgage" holder. On the other hand, defendant Halpern claims that plaintiff was to be the sole purchaser of the house and that Adlerstein was not going to be a co-mortgagor. (*Compare* Pl. 56.1 ¶ 17 (Halpern) *with* Halpern 56.1 ¶ 17 *and* Pl. 56.1 (Pecorale) ¶ 33.) Adlerstein initially proposed the transaction to plaintiff while in the presence of plaintiff's two sisters and a family friend.

(*See* Pl. Aff. ¶¶ 5-6.) One of plaintiff's sisters, her sister's boyfriend, and the friend also eventually purchased homes through Adlerstein. (*See* Pl. Dep. 240:19-244:6.)

Plaintiff returned to California and told her boyfriend, Josh Zaretsky, about Adlerstein's proposal. Thereafter, plaintiff told Adlerstein that she and Zaretsky were both interested in buying houses. (Pecorale 56.1 ¶ 10.)

### 2. The Purchase of 111 Berkley Street

For purposes of the pending motions, most of the relevant factual events occurred in October 2006 when plaintiff purchased a property in Valley Stream, New York.

In September 2006, Adlerstein had told plaintiff that he had found a home for purchase at 111 Berkley Street in Valley Stream. (*Id.* ¶ 12.) In early October, Adlerstein told plaintiff that the closing on the Berkley Street property was scheduled for October 10, 2006. (Halpern 56.1 ¶ 24.) Adlerstein also found a property for Zaretsky to purchase, located in Hempstead, New York; the closing on that property was scheduled for October 6, 2006. (*See id.*) Together, plaintiff and Zaretsky flew from California to New York for the closings, and Adlerstein paid their airfare. (*Id.* ¶ 25.)

#### a. The Zaretsky Closing

The closing on Zaretsky's property took place at defendant Halpern's office on October 6, 2006. Halpern represented the sellers. (Halpern Dep. 12:2-4.)[5]

---

[4] As discussed below, Adlerstein is a defendant in this case, but he has not appeared and the Clerk of the Court noted his default on May 7, 2009. (*See* Docket 44.)

[5] Zaretsky claims that Adlerstein had told him that both of them would be signing the mortgage.

Plaintiff attended the closing. (Halpern 56.1 ¶ 26.) While there, plaintiff learned that Halpern would be her attorney at her own closing, which was scheduled for four days later. She also learned from Halpern that Halpern was Adlerstein's cousin. (*Id.* ¶ 27.) Plaintiff did not see the Berkley Street property before October 10, and she was unaware of the purchase price of the house before that date. (*Id.* ¶ 29; Pl. Dep. 108:10-13.)

### b. The October 10, 2006 Meeting

On October 10, 2006, a meeting[6] took place at Halpern's office. It is undisputed that plaintiff, Zaretsky, Adlerstein, and defendant Halpern were at the October 10 meeting. (Pl Dep. 123:4-7.) The seller did not attend this meeting, nor did any representative of the seller. (*Id.* 123:11-19; Pl. Aff. ¶ 30.)

### 1. Documents Signed By Plaintiff

Plaintiff acknowledges that she was presented with a "very large stack of papers" at

---

(*See* Zaretsky Dep. 45:24-46:11; 80:13-81:7.) However, only Zaretsky signed the paperwork on October 6. (*See id.*) According to Zaretsky, on the following Tuesday, October 10, he went with Adlerstein to Pecorale's office where Adlerstein met with defendant Pecorale privately, and, after about an hour, they told Zaretsky that all the paperwork for the sale had been completed. (*See id.* 118:19-119:17.) Zaretsky's mortgage also eventually went into default, and he has sued numerous defendants, many of whom, including Pecorale, are also defendants in this suit. *See* Docket, *Zaretsky v. New Century Mortgage, et al.*, No. 08-cv-378 (DRH) (WDW) (E.D.N.Y.).

[6] Defendant Halpern characterizes this meeting as a "closing," but plaintiff disputes that characterization. (*Compare* Halpern 56.1 ¶ 28 *with* Pl. 56.1 (Halpern) ¶ 28).)

the meeting, that Halpern told her to sign the papers, and that she signed them. (Pl. Dep. 110:25-111:13.) It is undisputed that plaintiff signed, *inter alia*,

- a note in which she agreed to pay New Century Mortgage $105,000 in principal and interest at an annual rate of 10.80% and a mortgage securing the note;

- an adjustable rate balloon note in which she promised to pay New Century $420,000 in principal and interest at an initial yearly rate of 8.225% with an Adjustable Rate Rider and a mortgage on that note;

- a borrower's certification and authorization in which she certified that she had made no misrepresentations in signing the documents;

- an occupancy affidavit in which she represented that she would occupy the premises upon the close of escrow—even though she did not intend to occupy the premises;

- an income certification that significantly overstated her monthly income;

- a federal truth in lending disclosure statement.

(*See* Halpern 56.1 ¶¶ 34-38; 41-45; 47-48.)

Defendant Halpern contends that she explained each document and gave plaintiff an opportunity to ask questions about the documents. (*See* Halpern 56.1 ¶ 49.) Plaintiff disputes this, contending that Halpern and Adlerstein rushed her through the documents, telling her to "hurry up" because, among other things, plaintiff had to catch her return flight to California. (*See* Pl. Dep. 113:12-13; 113:21-22; 114:6-9; Pl. 56.1 (Halpern) ¶¶ 49, 88; Pl. 56.1 (Pecorale) ¶ 45; *see also* Pl. Aff. ¶ 27.)

### 2. Representations Allegedly Made By Halpern

Plaintiff claims that Halpern made several false representations to her at the October 10, 2006 meeting. For example, plaintiff claims that, after she noticed that Adlerstein's name was not on any of the documents, she asked Halpern about this. Plaintiff contends that Halpern said that she was "going to do Bobby tomorrow" and that Adlerstein had separate paperwork because he was the "main mortgage holder." (Pl. 56.1 (Halpern) ¶ 50; Pl. Dep. 114:20-23; 118:20-22.) For her part, Halpern claims that plaintiff had "no concern" that Adlerstein was not on the documents. (Halpern 56.1 ¶ 50.)

Additionally, plaintiff alleges that she asked Halpern about why the interest rate on the notes was so high. According to plaintiff, Halpern responded that the interest rates were so high because Adlerstein—who plaintiff allegedly believed was her co-borrower—had poor credit and owned other properties and because the house was being bought as an investment property, not for Adlerstein or plaintiff to live in. (Pl. 56.1 ¶ (Halpern) 90.) Halpern does not acknowledge making this statement.

Further, plaintiff contends that she asked Halpern about the income verification form—which overstated plaintiff's monthly income—and that Halpern told her that the amount was inclusive of both her income and Adlerstein's. (Pl. 56.1 (Halpern) ¶ 46.) Halpern does not acknowledge saying this. Plaintiff also claims that Halpern told her that the seller would sign his closing papers at a later date. (*See* Pl. Dep. 123:10-19.)

### 3. The Contract of Sale and the Payment from Adlerstein to Plaintiff

Plaintiff does not recall executing a contract of sale at the October 10 meeting, but a contract dated October 10 is signed by a "Danielle Sheehy." (Halpern 56.1 ¶ 31.) The contract reflects a purchase price of $525,000. (Halpern 56.1 ¶ 31.) At the end of the meeting, Adlerstein gave plaintiff two checks totaling $10,000. (*See* Halpern 56.1 ¶ 52.) Plaintiff says that these checks were to ensure that the mortgage payments would be made in the event that Adlerstein did not have enough money to the make payments. (*See* Pl. 56.1 (Halpern) ¶ 52.)

After plaintiff signed the documents at the October 10 meeting, plaintiff and Zaretsky returned to their home in California.

### 4. Halpern's Settlement Statement

Halpern later prepared a settlement statement reflecting that the closing took place on October 10, 2006 at her office and that the seller, the seller's attorney, Robert O'Brien, and a "Clifford Roth" participated in the closing. However, it is undisputed that these individuals were not, in fact, at the October 10 closing. Additionally, the settlement statement lists a sellers'

concession of $27,182.92. It also reflects that the "Purchaser's Lender's Attorney"—i.e., defendant Pecorale—was issuing checks on the seller's behalf to, *inter alia*, Adlerstein for $21,567.52 and Stephen Green for $6,000. (*See* DeRossi Dec. Ex. N.)[7] Plaintiff asserts that she did not approve these payments and was unaware of them until months later when she discovered a document in Adlerstein's home office while visiting the home that her mother and Adlerstein shared. (*See* Pl. Dep. 137:10-138:22.)[8]

b. Closing Activity Post-October 10, 2006

In the days after October 10, Halpern and defendant Pecorale, among others, took steps to finalize the sale of 111 Berkley Street to plaintiff.

On October 11, 2006, Halpern received two faxes from Robert O'Brien, the seller's attorney. (DeRossi Dec. Exs. H, I.) One fax noted that "[t]he premises are being sold for a 'net' sales price . . . of $460,000 . . . ," not the $525,000 reflected in the contract of sale. (*Id.* Ex. H.) The other fax reiterated the $460,000 "'net'" and also mentioned a "seller's concession" of $65,000, a larger concession than is reflected in Halpern's Closing Statement. (*Id.* Ex. I.) According to O'Brien's deposition testimony, on the following day, October 12, the seller executed a contract of sale, and O'Brien exchanged the deed to the house for a check in the amount of $460,000. (Pl. 56.1 (Halpern) ¶¶ 95-96.) On the deed of transfer, however, the "12th" day of October is

crossed out, and "10th" is written in. (DeRossi Dec. Ex. J.) Also on October 12, O'Brien faxed defendant Pecorale, the attorney for the lender, New Century Mortgage, a letter which, according to the cover sheet, included a copy of "the signed deed" and asked "[w]hen and where are we going to make the transfer?" (Pl. 56.1 (Pecorale) ¶ 101.)

Defendant Pecorale's office then proceeded to prepare several documents related to the sale, including two "HUD-1" statements. These statements list the closing on the property as taking place at Pecorale's office on October 10, 2006, even though plaintiff signed her paperwork at Halpern's office on October 10 and, allegedly, was told that the closing would not be finalized for several days. (*See* Pecorale Dep. 127:10-130:20.) The HUD-1 statements also list a different sellers' concession than the $65,000 amount described in the October 11 correspondence between Halpern and O'Brien. (DeRossi Dec. Ex. L.) Pecorale also signed the $21,567.52 check made out to Adlerstein on October 13, 2006. ( DeRossi Dec. O.) Pecorale also issued a $6,000 check to Steven Green and a second check to Green in the amount of $6,567.53. (*See* Pecorale Dep. 132:23-133:16.) Pecorale claimed he believed that Adlerstein was a realtor involved in the Berkley Street transaction but that he was unsure of Green's role. (*Id.* 132:25-136:17.) A broker's commission is not, however, listed on the HUD-1 statements. (*Id.* 129:2-5; 129:23-130:4.)

---

[7] Plaintiff believes that Green was Adlerstein's business partner. (*See* Pl. Dep. 138:14-19.)

[8] Plaintiff also testified, however, that she "assumed" Adlerstein would be getting a realtor fee. (Pl. Dep. 128:22-25.)

### 3. Post-Closing Events

#### A. Plaintiff Learns Adlerstein Is Not on the Mortgage

After plaintiff's return to California, she learned that Adlerstein had found a tenant, and all appeared normal until mid-February 2007. (*See* Halpern 56.1 ¶ 58; Pl. 56.1 (Halpern) ¶¶ 58.) In mid-February though, plaintiff received a call from New Century Mortgage telling her that the mortgage had not been paid on February 1. (Pl Dep. 178:3-18.) New Century told plaintiff that Adlerstein had paid the mortgage in December and January, but that no payment had been received for February. Plaintiff asked New Century if they had contacted Adlerstein. They said they had not because he was not on the mortgage. According to plaintiff, this was the first she learned that Adlerstein was not her co-mortgagor. (Pl. Dep. 178:3-21.)

Plaintiff then contacted Halpern who confirmed that Adlerstein was not on the mortgage. According to plaintiff, Halpern further stated that Adlerstein had been unable to get a mortgage because of his low credit score and the fact that he had purchased a home in Baldwin, New York earlier in 2006. (*Id.* 180:15-21, 256:12-19.) Adlerstein eventually made the mortgage payment for February (*Id.* 182:11-17; Halpern 56.1 ¶ 59.) but did not make any further payments to the bank. He did, however, send plaintiff $10,000 which she and Zaretsky used to make their mortgage payments for April.[9] Sheehy paid the May,

June, and July mortgage payments herself. (Pl. Dep. 196:17-18.) Adlerstein sent her an additional $10,000 in late July, but plaintiff was unable to cash this check because Adlerstein had insufficient funds in his account. (Pl. Dep. 199:8-201:19.)

#### B. The Attempted Sale

In late July 2007, plaintiff traveled to New York. While there, she visited Halpern and voiced her displeasure with Adlerstein's failure to make the mortgage payments. (Pl. Dep. 202:9-203:2; *see also* Halpern 56.1 ¶ 67.) Halpern also informed plaintiff that a buyer—"Vanessa"—had been found for 111 Berkley Street. (*See* Pl. Dep. 203:13-204:2; Halpern 56.1 ¶¶ 67-69.) Plaintiff, represented by Halpern, entered into a contract with Vanessa for the sale of the property, but the sale fell through. (Halpern 56.1 ¶¶ 67, 72.) Plaintiff claims that she retained Halpern to represent her in the attempted sale because Halpern and Adlerstein told her that it would be easiest to sell the house if she was represented by the same attorney who represented her when she bought the house. (Pl. Dep. 258:20-25.)

Plaintiff stopped paying the mortgage on 111 Berkley Street in September 2007. Her creditors initiated a foreclosure proceeding three months later. (Halpern 56.1 ¶¶ 73-74.)

### B. Procedural History

#### 1. The Complaint

Plaintiff filed this action on January 28, 2008. The complaint asserted claims for (1) common law fraud based on fraudulent lending practices; (2) fraudulent

---

[9] According to Zaretsky, he had been led to believe that Adlerstein was his co-mortgagor on the Hempstead property and discovered that this was not the case at around this same time. (*See* Zaretsky Dep. 129:2-15.)

misrepresentations[10]; (3) breach of fiduciary duty; (4) violations of the Equal Credit Opportunity Act, 15 U.S.C. § 1691(a); (5) violations of the Truth-in-Lending Act, 15 U.S.C. § 1601, *et seq.*; (6) violations of § 349 of the New York General Business Law; and (7) a declaratory judgment. The named defendants were: Halpern, Pecorale, Adlerstein, New Century Mortgage Corporation, America's Servicing Company, Carrington Mortgage Services, Southern Star Mortgage Corporation, Gary Shusterhoff, Tom DeBonis, and Rodney Boone. Plaintiff subsequently voluntarily dismissed her claims against America's Servicing Company, Carrington Mortgage, and Shusterhoff. (*See* Docket 3-5, 17, 29, 37-39.) Additionally, defendant New Century never answered the complaint.

## 2. Defaulting Defendants

Plaintiff subsequently moved for default judgment against Adlerstein, Boone, and DeBonis. (*See* Docket 41-43.) This Court granted default judgment and referred the matter to Magistrate Judge Orenstein for a recommendation and report as to damages and other relief sought by plaintiff. (*See* Docket 49.) The magistrate judge's assessment of damages is awaiting this Court's resolution of the instant motions. (*See* Docket 61.)

## 3. Defendants Halpern and Pecorale

---

[10] This claim in the complaint can be read to assert a claim for fraudulent misrepresentations or fraudulent inducement: "The false and deceptive representations and/or acts of fraudulent concealment committed by Defendants, fraudulently induced the Plaintiff to enter . . . ." (Compl. ¶ 106.) In briefing the pending motions, however, all parties treat this count solely as a claim for fraudulent misrepresentations.

Halpern answered on April 25, 2008 and asserted cross-claims for contribution and indemnity against all defendants and a counterclaim for defamation against Sheehy. Pecorale answered on May 8, 2008. He asserted cross-claims for indemnity and contribution against all defendants except Halpern. In August 2009, plaintiff voluntarily dismissed claims one, four, five, and seven against defendants Halpern and Pecorale. (*See* Docket 64.)

Defendants Halpern and Pecorale moved for summary judgment on the remaining claims—fraud, breach of fiduciary duty, and violations of New York's consumer protection statute, N.Y. General Business Law § 349, on October 23, 2009. Defendant Pecorale also moved for summary judgment on Halpern's cross-claims against him. Plaintiff submitted her oppositions on December 15, 2009, and defendants submitted their replies on January 8, 2010. The Court heard oral argument on February 12, 2010. The motion is fully submitted.

## II. STANDARD OF REVIEW

The standards for summary judgment are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may not grant a motion for summary judgment unless "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Reiseck v. Universal Commc'ns of Miami, Inc.*, 591 F.3d 101, 104 (2d Cir. 2010). The moving party bears the burden of showing that he or she is entitled to summary judgment. *See Huminski v. Corsones*, 396

F.3d 53, 69 (2d Cir. 2005). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*.'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (emphasis in original)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id.* at 247-48 (emphasis in original). Thus, the nonmoving party may not rest upon mere conclusory allegations or denials but must set forth "'concrete particulars'" showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978)). Accordingly, it is insufficient for a party opposing summary judgment "'merely to assert a conclusion without supplying supporting arguments or facts.'" *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996)

(quoting *Research Automation Corp.*, 585 F.2d at 33).

## III. DISCUSSION

As set forth below, the Court concludes that defendants are not entitled to summary judgment on plaintiff's fraud and breach of fiduciary duty claims, but are entitled to summary judgment on the § 349 claim.

In considering the parties' arguments, the Court, in exercising its diversity jurisdiction, must "apply the substantive law of the state to which the forum state, New York, would have turned had the suit been filed in state court." *Factors Etc., Inc. v. Pro Arts, Inc.*, 652 F.2d 278, 280 (2d Cir. 1981) (citations omitted). All sides agree that New York law applies to the instant case.

### A. Fraud and Breach of Fiduciary Duty Claims

#### 1. Claims Against Halpern

##### a. Breach of Fiduciary Duty

Under New York law, the elements of a breach of fiduciary duty claim are (1) that a fiduciary duty existed between plaintiff and defendant, (2) that defendant breached that duty, and (3) damages as a result of the breach. *Meisel v. Grunberg*, 651 F. Supp. 2d 98, 114 (S.D.N.Y. 2009) (citing *Whitney v. Citibank, N.A.*, 782 F.2d 1106, 1115 (2d Cir. 1986) and *Regions Bank v. Wieder & Mastroianni, P.C.*, 423 F. Supp. 2d 265, 270 (S.D.N.Y. 2006), *remanded on other grounds by* 253 F. App'x. 52 (2d Cir. 2007)).

Halpern does not—and cannot—dispute that, by serving as plaintiff's attorney, she had a fiduciary relationship with plaintiff.

9

(*See* Halpern Mem. of Law at 17); *see also Graubard Mollen Dannett & Horowitz v. Moskovitz*, 653 N.E.2d 1179, 1182 (N.Y. 1995) ("[A]n attorney stands in a fiduciary relation to the client.").

Instead, Halpern argues that plaintiff cannot establish a breach of fiduciary duty occurred because plaintiff has not submitted any expert testimony. (*See id.* at 17-18.) In support of this argument, Halpern cites the fact that New York courts generally require expert testimony to establish the standard of care in legal malpractice cases. *See, e.g., D'Jamoos v. Griffith*, No. 00 CV 1361, 2001 WL 1328592, at *6 (E.D.N.Y. Aug. 1, 2001). Typically, in these cases, expert testimony is used to establish the reasonableness of discretionary decisions made by an attorney, such as a decision to question a witness, raise a particular argument, or make a particular motion. *See, e.g., Kranis v. Scott*, 178 F. Supp. 2d 330, 335 (E.D.N.Y. 2002) (requiring expert testimony where malpractice claim involved, *inter alia*, questions of the reasonableness of failure to raise a particular defense); *Hatfield v. Herz*, 109 F. Supp. 2d 174, 179-80 (S.D.N.Y. 2000) (granting summary judgment to defendant where plaintiff failed to provided expert testimony on malpractice claim that concerned, *inter alia*, defendant's failure to request a jury trial, failure to prepare adequately for trial, failure to call certain witnesses, and failure to file and litigate certain pre-trial motions); *Greene v. Payne, Wood and Littlejohn*, 602 N.Y.S.2d 883, 885 (App. Div. 1993) (requiring expert testimony to address "the question of whether the defendants were negligent in failing to separately plead the pendent State claim at the time they instituted the Federal suit"). However, there are exceptions to the rule requiring expert testimony. Expert testimony is not required in legal malpractice cases if "'the ordinary experience of the fact-finder provides sufficient basis for judging the adequacy of the professional service . . . , or the attorney's conduct falls below any standard of due care . . . ." *Greene*, 602 N.Y.S.2d at 885; *see also Stonewell Corp. v. Conestoga Title Ins. Co.*, - - - F. Supp. 2d - - -, No. 04 CV 9867 (KMW) (GWG), 2010 WL 46015, at *5 (S.D.N.Y. Jan 7, 2010) ("[E]xpert testimony may be deemed unnecessary [in legal malpractice cases] where the ordinary experience of the fact finder provides sufficient basis for judging the adequacy of the professional service." (internal quotations and citations omitted)).

Here, plaintiff asserts a breach of fiduciary duty claim against Halpern, not a legal malpractice claim. However, the Court will assume, *arguendo*, that the rule regarding expert testimony applies to breach of fiduciary duty claims against an attorney as well as legal malpractice claims because these causes of action are closely related under New York law. For example, the Appellate Division, First Department, has described breach of fiduciary duty and legal malpractice claims as "co-extensive,"[11] and, when a plaintiff asserts both a legal malpractice claim and a breach of fiduciary duty claim against an attorney, New York courts typically dismiss the breach of fiduciary duty claim as duplicative of the malpractice claim. *See, e.g., Joyce v. Thompson Wigdor & Gilly, LLP*, No. 06 Civ. 15315 (RLC) (GWG), 2008 WL 2329227

---

[11] *Weil, Gotshal, & Manges v. Fashion Boutique of Short Hills*, 780 N.Y.S.2d 593, 596 (App. Div. 2004); *see also Kirk v. Heppt*, 532 F. Supp. 2d 586, 591 (S.D.N.Y. 2008) (construing *pro se* plaintiff's claim for breach of fiduciary duty as a claim for legal malpractice).

(S.D.N.Y. June 3, 2008) ("Under New York law, where claims of negligence, breach of contract, breach of fiduciary duty, negligent misrepresentation, or fraudulent misrepresentation are premised on the same facts and seek identical relief as a claim for legal malpractice, those claims are duplicative and must be dismissed."); *Amadasu v. Ngati*, No. 05 CV 2585 (JFB) (LB), 2006 WL 842456, at *9 (E.D.N.Y. Mar. 27, 2006) (collecting cases); *Fashion Boutique of Short Hills*, 780 N.Y.S.2d at 596; *Schweizer v. Mulvehill*, 93 F. Supp. 2d 376, 400 & n.29 (S.D.N.Y. 2000) ("New York law clearly provides . . . that where breach-of-fiduciary duty claims mirror allegations of malpractice, they must be dismissed.").

In any event, plaintiff need not provide expert testimony to survive summary judgment because both above-referenced exceptions to the rule apply here. Typically, the exceptions apply in cases where the attorney's alleged conduct is so egregious that the reasonableness of the conduct is not at issue. *See, e.g.*, *Northrop v. Thorsen*, 848 N.Y.S.2d 304, 308 (App. Div. 2007) (stating that expert testimony not required because attorney's disregard of "clearly defined and firmly established" rule set forth in New York Worker's Compensation law "fell below any permissible standard of due care"); *Shapiro v. Butler*, 709 N.Y.S.2d 687, 689 (App. Div. 2000) (expert testimony not required to establish that lawyer who failed to file an answer, which led to a default judgment against client, acted negligently); *S & D Petroleum Co. v. Tamsett*, 534 N.Y.S.2d 800, 802 (App. Div. 1988) (expert testimony not required to establish that lawyer retained to secure a debt rendered inadequate professional service by failing to file a security agreement necessary to secure the debt). The allegations in this case clearly fall within the exceptions to the requirement of expert testimony. The

gravamen of plaintiff's breach of fiduciary duty claim is that Halpern lied to her and had conflicting loyalties. Specifically, plaintiff claims that Halpern provided false assurances and made material omissions during the October 10, 2006 meeting—which included, among other things, allegedly lying to plaintiff by telling her that Adlerstein was also going to be on the mortgage—and thereby convinced plaintiff to close on 111 Berkley Street and that, by doing so, Halpern furthered Adlerstein's interests at plaintiff's expense. (*See* Pl. Mem. of Law (Halpern) at 10; *see also, e.g.*, Pl. Dep. 112:6-22; 114:10-115:20.) Additionally, plaintiff has submitted evidence that Halpern knew about the $21,567.52 payment to Adlerstein (*see* DeRossi Dec. Ex. N) and that she failed to disclose this payment to plaintiff.

False statements or material omissions by an attorney to a client clearly breach the attorney's fiduciary duties, particularly where those false statements and omissions further conflicting interests. *See, e.g.*, *Summit Rovins & Feldesman v. Fonar Corp.*, 623 N.Y.S.2d 245, 246 (App. Div. 1995) (noting that attorney has fiduciary duty "to bring to the client's attention all relevant considerations" and denying defendant-attorney summary judgment because triable issues of fact existed regarding adequacy of attorney's disclosures about conflicts of interest). *See generally Mermelstein v. Spector*, 485 F.2d 474, 479 (2d Cir. 1973) (classifying, as a "recognized basic principle," the rule than an attorney who "negligently or willfully withholds from his client information material to the client's decision to pursue a given course of action, or to abstain therefrom, . . . is liable for the client's losses suffered as a result of action taken without benefit of the undisclosed material facts"); *Ulico Cas. Co. v. Wilson,*

*Elser, Moskowitz, Edelman & Dicker*, 865 N.Y.S.2d 14, 21 (App. Div. 2008) ("[A]ny act of disloyalty by counsel will also comprise a breach of the fiduciary duty owed to the client.") Assuming the jury credited plaintiff's version of events, it would not need expert testimony to find that a lawyer who allegedly violated basic requirements of the attorney-client relationship—candor and loyalty — by engaging in, among other things, outright fraud (as is alleged here) failed to provide "adequa[te] professional service" and "fell[ ] below any standard of due care." Therefore, where, as here, the issue is whether an attorney breached her fiduciary duty by engaging in outright fraud in connection with a real estate transaction, plaintiff need not provide expert testimony to survive summary judgment on this claim.

Halpern also argues that plaintiff cannot establish that she sustained damages as a result of Halpern's breach of fiduciary duty. Again, the Court disagrees. Halpern correctly points out that plaintiff must establish that the alleged breach of fiduciary duty was both a "but for" and proximate cause of plaintiff's damages. *See, e.g.*, *Nordwind v. Rowland*, 584 F.3d 420, 433 (2d Cir. 2009).[12]

A rational jury could conclude, if plaintiff's evidence is credited, that the alleged misstatements and omissions, as well as Halpern's alleged conflict of interest, caused plaintiff to purchase 111 Berkley Street and that she suffered damages as a result of that purchase. To the extent Halpern argues that she cannot be liable because it was Adlerstein's fraudulent statements and/or breaches of fiduciary duty that caused plaintiff to enter into the transaction, that argument misconstrues the causation requirement. As long as plaintiff can show that Halpern's alleged breach of fiduciary duty was "independently sufficient to have caused [her] injury," she can establish "but for causation." *RSL Commc'ns. PLC v. Bildrici*, 649 F. Supp. 2d 184, 209 (S.D.N.Y. 2009); *Atlantic Mut. Ins. Co. v. Alitalia-Linee Aeree Italiane-So Cieta Per Azioni*, No. 02 Civ. 5758 GBD, 2005 WL 427573, at *3 (S.D.N.Y. Feb. 22, 2005) ("[E]ach defendant's action standing alone [must be] sufficient[ to have caused] the harm. While each action by a defendant may have contributed to the cause of Plaintiff's damages, there nonetheless still needs to be 'a causal relationship between a defendant's actions and the harm suffered.'" (quoting and citing *Point Prods. A.G. v. Sony Music Entm't, Inc.*, 215 F. Supp. 2d 336, 342 (S.D.N.Y. 2002))); *see also Barnes v. Andrews*, 298 F. 614, 616 (S.D.N.Y. 1924) (Hand, J.) ("The plaintiff must accept the burden of showing that the performance of

---

[12] At one time, a less demanding, "substantial factor" test applied to breach of fiduciary duty claims against an attorney. *See Milbank, Tweed, Hadley, & McCoy v. Boon*, 13 F.3d 537, 543 (2d Cir. 1994). However, in *Weil, Gotshal, & Manges v. Fashion Boutique of Short Hills*, 780 N.Y.S.2d 593 (App. Div. 2004), the First Department subsequently rejected the "substantial factor" standard, and numerous New York courts have followed this decision. *See* 780 N.Y.S.2d at 596; *see also Ulico Cas. Co.*, 865 N.Y.S.2d at 22. And, while applying New York law, the Second Circuit has distanced itself from *Boon* and stated that where, as here, a plaintiff seeks damages—and not

merely restitution—for a breach of fiduciary duty, "'the plaintiff must demonstrate that the defendant's conduct proximately caused injury in order to establish liability.'" *Nordwind*, 584 F.3d at 433 (quoting *LNC Invs., Inc. v. First Fidelity Bank, N.A. N.J.*, 173 F.3d 454, 465-66 (2d Cir. 1999)); *see also LNC Invs., Inc.*, 173 F.3d at 465-66.

the defendant's duties would have avoided loss, and what loss it would have avoided.").

Here, plaintiff testified that she placed a great deal of trust and reliance on the allegedly fraudulent statements made by Halpern at the October 10 meeting. (*See, e.g.*, Pl. Dep. 112:20-22 ("Q. And you accepted [Halpern's] explanation [of why the interest rate was so high]? A. Of course. She was my attorney."); *id.* 114:24-115:20; 118:23-119:4.) Viewing the facts in this case in a light most favorable to the plaintiff, a rational jury could conclude that, if Halpern had been completely candid with plaintiff regarding, *inter alia*, the fact that Adlerstein was not a co-signor on the mortgage and regarding the undisclosed payment to Adlerstein, plaintiff would not have continued with the purchase of 111 Berkley Street and would not have suffered damages as a result.[13] Therefore, Halpern's motion for summary judgment is denied as to the breach of fiduciary duty claim.

### b. Common Law Fraud

Halpern also moves for summary judgment plaintiff's common law fraud claim. In order to prove such a claim under New York law, a plaintiff must demonstrate: (1) a false representation of material fact; (2) knowledge

by the party who made the representation that it was false when made; (3) justifiable reliance by the plaintiff; and (4) resulting injury. *See Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 291 (2d Cir. 2006).

There are triable issues of fact regarding plaintiff's fraud claim against Halpern. Plaintiff claims that defendant Halpern made several false statements at the October 10, 2006 meeting. For example, plaintiff claims that she asked Halpern why the interest rate on the mortgage paperwork was so high, and Halpern falsely responded that the high interest rate resulted from the fact that Adlerstein—who plaintiff alleges she believed was a co-signor on the mortgage—owned other properties and had a low credit score. (Pl Dep. 112:6-22.) Plaintiff also claims that Halpern falsely told her that the "gross monthly income" figure on the Income Certification Form—which was significantly higher than plaintiff's monthly salary—was calculated based on the combination of plaintiff's salary and Adlerstein's salary. (*Id.* 164:6-10.)

Plaintiff also states that when she asked Halpern why Adlerstein was not on the documents, Halpern falsely responded that she was "going to do [Adlerstein] tomorrow." (*Id.* 114:20-23; 121:6-14.) Viewing the evidence in a light most favorable to plaintiff, the non-moving party, a reasonable jury could find that Halpern made this statement and that she made it knowing that Adlerstein would not be signing the documents the next day—or ever. Such a statement is fraudulent. *Graubard Mollen Dannett & Horowitz v. Moskovitz*, 653 N.E.2d 1179, 1184 (N.Y. 1995) ("A false statement of intention is sufficient to support an action for fraud . . . ."); *Channel Master Corp. v. Aluminum Ltd. Sales, Inc.*, 151

---

[13] To the extent plaintiff's breach of fiduciary duty claim against Halpern is, essentially, a legal malpractice claim, the causation standard in legal malpractice cases is also met on these alleged facts for purposes of summary judgment. *See, e.g.*, *Smartix Int'l Corp. v. Garrubbo, Romankow, & Capese, P.C.*, No. 06 Civ. 1501 (JGK), 2009 WL 857467, at *4 (S.D.N.Y. Mar. 31, 2009) (stating, in context of a legal malpractice claim, "it is not necessary to demonstrate sole causation in order to demonstrate proximate or but-for causation." (citing *Barnett v. Schwartz*, 848 N.Y.S.2d 663, 667 (App. Div. 2007))).

N.E.2d 833, 835 (N.Y. 1958) ("A person's intent, his state of mind, it has long been recognized, is capable of ascertainment and a statement of present intention is deemed a statement of a material existing fact, sufficient to support a fraud action."); *Computech Int'l., Inc. v. Compaq Computer Corp.*, No. 02 Civ.2628 (RWS), 2004 WL 1126320, at *8 (S.D.N.Y. May 21, 2004) ("[A] failure to perform promised future acts can serve as the basis for a fraud claim where a party establishes that there was an intent not to perform existing at the time that the promise was made. . . . Summary judgment cannot be granted where a reasonable jury could conclude that statements were made with a present intent to deceive.").

In response to plaintiff's evidence, Halpern also argues that she is entitled to summary judgment because plaintiff did not allege in the complaint that Halpern (or Adlerstein) represented that Adlerstein would be a co-mortgagor. (*See generally* Halpern Reply Mem. of Law, at 2-3, 5-6.) The Court, however, disagrees, given the circumstances of this case. The complaint alleges false misrepresentations were made without alleging the precise details of each specific misrepresentation. Thus, this alleged misrepresentation is not, in any way, contradicted by the general allegations of the complaint. Moreover, although none of the alleged fraudulent misrepresentations are detailed in the complaint, defendants chose not to make a motion to dismiss under Rule 9(b) of the Federal Rules of Civil Procedure. Instead, the specifics of the alleged misrepresentations, as indicated by the record on this summary judgment motion, became apparent during discovery, and both sides had an opportunity to fully explore such alleged misrepresentations during the discovery process. For example, plaintiff testified about these allegations at her February 8, 2009 deposition. Therefore, defendants had the opportunity to examine plaintiff regarding these allegations, as well as engage in other discovery regarding these allegations, and were on notice of the allegations for over eight months before making the instant motions. As such, any prejudice to defendants is non-existent, and the Court declines to grant summary judgment to defendants on the grounds that plaintiff's complaint does not allege the fraudulent misrepresentations with specificity. *Cf. Joseph Vicotri Wines v. Vina Santa Carolina S.A.*, 933 F. Supp. 347, 356 (S.D.N.Y. 1996) (stating that, although complaint did not "contain allegations specifically setting forth all of the misstatements to which plaintiff refers in its . . . papers" opposing defendants' motions to dismiss and for summary judgment, "document discovery[,] and the testimony in [an affidavit from plaintiff's vice president] have already fleshed out the plaintiff's allegations."); *see also Indep. Energy Corp. v. Trigen*, 944 F. Supp. 1184, 1199 (S.D.N.Y. 1996) (finding that although "complaint . . . fails to satisfy the requirement[] that it indicate precisely what all of the alleged misstatements were . . . [d]efendant has filed a responsive pleading in this matter and has had ample opportunity through discovery to ascertain the full factual basis of plaintiff's fraud claim"); *Fed. Agric. Mortgage Corp. v. It's a Jungle Out There*, No. C 03-3721 VRW, 2005 WL 3325051, at *6 (N.D. Cal. Dec. 7, 2005). *See generally Cain v. Bethea*, No. 09 CV 3946 (JG), 2007 WL 2859681, at *18 n.62 (E.D.N.Y. Aug. 17, 2007) *Report and Recommendation rejected in part on other grounds*, 2007 WL 2846914 (E.D.N.Y. Sept. 26, 2007) ("To the extent that any of the allegations in the Complaint may not fully comply with the requirements of Rule 9(b), the Court notes that the defendants did

not raise a Rule 9(b) challenge to the sufficiency of the pleadings in their motion to dismiss. Given that the pending motions are for summary judgment, and since plaintiffs would presumably incorporate the evidence obtained during discovery into its amended pleadings, the Court has decided the pending motions for summary judgment without regard to any deficiencies in the Amended Complaint.").

Additionally, although Halpern contends that the other elements of a fraud claim cannot be met by plaintiff as a matter of law, the Court finds that argument unpersuasive. Construing the evidence most favorably to plaintiff (including drawing all reasonable inferences in her favor), a reasonable jury could conclude that the other elements of a fraud claim are met. Apparently attacking the materiality of the alleged statements and plaintiff's reliance on them, Halpern argues that any false statements regarding Adlerstein's role in the purchase did not cause plaintiff to complete the purchase of 111 Berkley Street. (*See* Halpern Reply Mem. of Law at 6.) The Court disagrees. To succeed on her fraud claim, plaintiff need only establish that Halpern's alleged misstatements were an inducing cause in her decision. *See State Street Trust v. Ernst*, 15 N.E.2d 416, 423 (N.Y. 1938) ("The fraudulent misrepresentations on the part of defendants need not be the sole inducing cause of the damage. It is sufficient if such representations be an inducing cause."); *see also In re Parmalat Sec. Litig.*, 477 F .Supp. 2d 602, 611 (S.D.N.Y. 2007) ("'The reliance element of fraud is essentially causation in fact. Thus, defendant's conduct need not have been the 'exclusive inducing cause' of plaintiff's actions, but only an 'essential or inducing cause.'" (quoting *Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 278 (2d Cir. 1992) *abrogated on other grounds as*

recognized in *Gerosa v. Savasta & Co.*, 329 F.3d 317, 322-23 (2d Cir. 2003))); *Phillips v. Better Homes Depot, Inc.*, No. 02-CV-1168 (ERK), 2003 WL 25867736, at *12 (E.D.N.Y. Nov. 12, 2003) ("'In fraud actions, the fraudulent representations complained of need not be the sole consideration or inducement moving a plaintiff; if the representations contributed to the formulation of the conclusion in a plaintiff's mind, that is enough.'" (quoting 37 Am. Jur. 2d Fraud and Deceit § 245)); *Curiale v. Peat, Marwick, Mitchell & Co.*, 630 N.Y.S.2d 996, 1002 (App. Div. 1995); *In re Fifth Judicial Dist. Asbestos Litig.*, 784 N.Y.S.2d 829, 833 (Sup. Ct. 2004) (collecting cases). The Court has already concluded, in the context of plaintiff's breach of fiduciary duty claim, a rational jury could conclude that Halpern's alleged misstatements were a "but for" cause of plaintiff's damages if plaintiff's evidence is credited. Thus, Halpern's statements could easily meet the "inducing cause" standard applicable to the fraud claim.[14]

---

[14] Some courts have also included an additional element of "intent to defraud" as part of common law fraud claim under New York law. *See, e.g.*, *Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 98 (2d Cir. 1997). However, the Appellate Division has also stated that plaintiff need not show that defendant had a "specific intent" to induce acts by the plaintiff. *Houbigant, Inc. v. Deloitte & Touche, LLP*, 753 N.Y.S.2d 493, 499 (App. Div. 2003) ("[T]he plaintiff must only allege facts from which it may be inferred that the defendant was aware that its misrepresentations would be reasonably relied upon by the plaintiff, not that the defendant intended to induce the particular acts of detrimental reliance ultimately undertaken by the plaintiff."). In *Lerner*, the Second Circuit declined to decide whether the formulation requiring an intent to defraud is consistent with *Houbigant*. 459 F.3d at 291 n.8. In any event,

### c. Effect of Plaintiff's Conduct

Halpern also asserts as a defense the fact that plaintiff signed documents at the October 10 meeting knowing them to be false. Halpern specifically cites the income verification form and the occupancy affidavit. Therefore, Halpern attempts to invoke the defense of unclean hands to preclude plaintiff's claims.

The defense of unclean hands requires the party asserting the affirmative defense to prove that (1) the offending party is guilty of immoral, unconscionable conduct; (2) the conduct was relied upon by the asserting party; and (3) the asserting party was injured as a result. *Kopsidas v. Krokos*, 742 N.Y.S.2d 342,

---

even if New York law requires that plaintiff prove this additional element, this requirement does not affect the Court's analysis because there is sufficient evidence in the record, if all of plaintiff's evidence is credited, for a rational jury to conclude Halpern acted with intent to fraudulently induce the particular acts of detrimental reliance claimed by plaintiff – namely, the signing of the mortgage and purchase of the property. Specifically, assuming plaintiff's evidence is true and all reasonable inferences are drawn in her favor, it could be inferred that Halpern told plaintiff that Adlerstein was a co-mortgagor to deceive plaintiff into entering the transaction. In this regard, statements allegedly made by Halpern to the effect that "[Adlerstein] is going to take care of everything. This is a great idea for you to do," are, even if not affirmatively false, also probative of Halpern's allegedly fraudulent intent. (Pl. Aff. 20; Pl. Dep. 120:13-19.) *Cf. United States v. Philip Morris USA Inc.*, 566 F.3d 1095, 1118 (D.C. Cir. 2009) ("A person's state of mind is rarely susceptible of proof by direct evidence, so specific intent to defraud may be, and most often is, inferred from the totality of the circumstances, including indirect and circumstantial evidence.").

344 (App. Div. 2002); *see also In re Cohen*, Nos. 08-70271-478 and 08-8058-478, 2009 WL 1871054, at *16 (Bankr. E.D.N.Y. June 29, 2009). The party asserting the doctrine has the initial burden of demonstrating these elements. *Fade v. Pugliani/Fade*, 779 N.Y.S.2d 568, 570 (App. Div. 2004). The doctrine of unclean hands is "never used unless the plaintiff is guilty of immoral, unconscionable conduct and even then only 'when the conduct relied on is directly related to the subject matter in litigation and the party seeking to invoke the doctrine was injured by such conduct.'" *Nat'l Distillers & Chem. Corp. v. Seyopp Corp.*, 214 N.E.2d 361, 362 (N.Y. 1966) (internal citations omitted); *see also Markel v. Scovill Mfg. Co.*, 471 F. Supp. 1244, 1255 (W.D.N.Y. 1979) ("[C]ourts are reluctant to apply the unclean hands doctrine in all but the most egregious situations.").

The Court, however, declines to grant Halpern summary judgment on this ground. First, plaintiff contends that Halpern told her that the income verification form consisted of both plaintiff's income and Adlerstein's. Thus, factual issues exist regarding this document. Second, with regard to the occupancy affidavit, there is also evidence in the record suggesting that Halpern herself was aware that plaintiff, who was flying back to California after the meeting, would not be occupying the premises. Moreover, there is a disputed issue as to whether Halpern was injured by these allegedly false representations by plaintiff and whether plaintiff's conduct was equal to Halpern's alleged conduct. *Cf. Mallis v. Bankers Trust Co.*, 615 F.2d 68, 75-76 (2d Cir. 1980) (Friendly, J.) (declining to apply unclean hands defense to fraud claims where defendant could not show, *inter alia*, that it was injured by the allegedly wrongful

conduct and that plaintiff's alleged misconduct was equal to defendant's). Therefore, given these disputed factual issues, summary judgment against plaintiff is unwarranted on the basis of any alleged fraudulent conduct by plaintiff in connection with the real estate transaction at issue.[15]

## 2. Claims Against Pecorale

Pecorale contends that he cannot be liable

for fraud because it is undisputed that he never made any statements to plaintiff. Moreover, Pecorale asserts that, as the attorney for the lender, he cannot be liable for breaching a fiduciary duty to plaintiff. However, plaintiff seeks to recover from Pecorale on the theory that he aided and abetted a fraud and a breach of fiduciary duty. As set forth below, the Court concludes that, construing the evidence most favorably to the non-moving party, plaintiff has raised genuine issues of fact regarding whether Pecorale aided and abetted a breach of fiduciary duty and fraud by Adlerstein in connection with the real transaction at issue.

### a. Aiding and Abetting Breach of Fiduciary Duty

For Pecorale to be liable for aiding and abetting a breach of fiduciary duty, plaintiff must show (1) a breach of fiduciary duty; (2) Pecorale knowingly participated in or induced the breach; and (3) that plaintiff suffered damages as a result of the breach. *Kaufman v. Cohen*, 760 N.Y.S.2d 157, 169 (App. Div. 2003); *see also In re Sharp*, 403 F.3d 43, 49-50 (2d Cir. 2005) (quoting and citing *Kaufman*). To have knowingly participated in a breach of fiduciary duty, a defendant must have "provide[d] 'substantial assistance'" to the primary violator. *Kaufman*, 760 N.Y.S.2d at 157. "Substantial assistance may only be found where the alleged aider and abettor 'affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the breach to occur. The mere inaction of an alleged aider and abettor constitutes substantial assistance only if the defendant owes a fiduciary duty directly to the plaintiff.'" *In re Sharp*, 403 F.3d at 50 (quoting *Kaufman*, 760 N.Y.S.2d at 157 (additional internal citations

---

[15] New York law also generally denies recovery, as a matter of public policy, "'to those injured in the course of committing a serious criminal act.'" *Alami v. Volkswagen of Am.*, 766 N.E.2d 574, 576 (N.Y. 2002) (quoting *Barker v. Kallash*, 468 N.E.2d 39, 41 (N.Y. 1984)). However, this rule, known as the "*Barker/Manning*" rule, "embodies a narrow application of public policy imperatives under limited circumstances." *Id.* at 577. It applies only when "the parties to the suit were involved in the underlying criminal conduct, or where the criminal plaintiff seeks to impose a duty arising out of an illegal act." *Id.* (declining to apply the rule to prevent estate of man killed while driving drunk from recovering in action alleging a design defect in the car that the man had been driving). To the extent defendant Halpern relies on the rule here for purposes of summary judgment, that argument is unavailing, at least at this stage of the litigation. With respect to the income verification form, as noted above, disputed issues of fact exist regarding plaintiff's understanding (and Halpern's role in shaping that understanding) of the income verification form. *Cf. Pfeffer v. Pernick*, 700 N.Y.S.2d 816, 816 (App. Div. 2000) (denying summary judgment on legal malpractice claim because issues of fact existed regarding plaintiff's role in causing her own damages). Moreover, the significance of the occupancy affidavit to the transaction is unclear from the record. Thus, because there are disputed issues of fact that could affect the application of this narrow rule to plaintiff's alleged conduct, defendants are not entitled to summary judgment on this ground.

omitted)). "Substantial assistance" also requires that the alleged aider and abettor "proximately caused the harm on which the primary liability is predicated" such that the plaintiff's injury was "'a direct or reasonably foreseeable result of the conduct.'" *Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC*, 479 F. Supp. 2d 349, 370-71 (S.D.N.Y. 2007) (quoting *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Secs., LLC*, 446 F. Supp. 2d 163, 201-02 (S.D.N.Y. 2006))).[16]

The parties' arguments on the pending motion focus on whether Pecorale aided and abetted Halpern's alleged breached of fiduciary duty. However, even if Halpern breached her fiduciary duties to plaintiff, there is no evidence that Pecorale induced or otherwise substantially assisted Halpern in breaching those duties. Plaintiff does not present any evidence that Pecorale, for example, paid Halpern or concealed the fact that Halpern was, allegedly, not advancing Adlerstein's interests at plaintiff's expense. Thus, no triable issue of fact exists as to whether Pecorale aided and abetted Halpern's breach of fiduciary duty.

However, genuine issues of material fact exist as to whether Pecorale aided and abetted Adlerstein (not Halpern) in a breach of fiduciary duty. In particular, plaintiff has submitted sufficient evidence to create genuine issues of disputed fact as to whether Adlerstein owed plaintiff fiduciary duties, whether he breached those duties, whether Pecorale knew of and substantially assisted that breach, and whether plaintiff suffered damages as a result. Under New York law, "'a fiduciary relation exists between two persons when one of them is under a duty to act or to give advice for the benefit of the other upon matters within the scope of the relation.'" *Lumbermen's Mut. Cas. Co. v. Franey Muha Alliant Ins. Serv.*, 388 F. Supp. 2d 292, 305 (S.D.N.Y. 2005) (quoting *Bank of Am. Corp. v. Lemgruber*, 385 F. Supp. 2d 200, 224 (S.D.N.Y 2005)) (finding triable issues of fact regarding existence of a fiduciary relationship); *AHA Sales, Inc. v. Creative Bath Prods., Inc.*, 867 N.Y.S.2d 169, 181 (App. Div. 2008) ("A fiduciary relationship 'whether formal or informal, is one founded upon trust or confidence reposed by one person in the integrity and fidelity of another . . . [and] might be found to exist, in appropriate circumstances, between close friends . . . or even where confidence is based upon prior business dealings.'" (quoting *Apple Records v. Capitol Records*, 529 N.Y.S.2d 279, 283 (App. Div. 1988))); *see also Manela v. Garantia Banking Ltd.*, 5 F. Supp. 2d 165, 180 (S.D.N.Y. 1998) (finding triable issue of fact regarding existence of a fiduciary relationship when plaintiff spoke to one of defendant's employees "on a near-daily basis and often acted in reliance on [employee's] advice, such as when he invested in the [debt fund managed by defendants]").

If plaintiff's evidence is credited, a rational jury could find that Adlerstein entered into a relationship of special trust with plaintiff. Plaintiff, a resident of California, relied on Adlerstein to find

---

[16] As noted in *Fraternity Fund*, some courts in this circuit have expressed doubt about whether "proximate cause" is actually a sub-element of "substantial assistance." *See Fraternity Fund*, 479 F. Supp. 2d at 370-71 & n.113 (collecting cases). However, courts have continued to require proximate cause here, reasoning that "'the Second Circuit has utilized the 'proximate cause' standard in the context of aiding and abetting securities fraud.'" *Fraternity Fund*, 479 F. Supp. 2d at 370-71 (quoting *JP Morgan Chase Bank v. Winnick*, 406 F. Supp. 2d 247, 256 n.6 (S.D.N.Y. 2005)).

suitable investment property on Long Island. (*See, e.g.*, Pl. Dep. 50:18-51:2; 59:22-60:25; 70:20-71:11.) Adlerstein also provided the attorney, the mortgage broker, and the appraiser for plaintiff's purchase of 111 Berkley Street. (*Id.* 50:18-50:23.) Indeed, before traveling to New York in October 2006, plaintiff had not met her attorney (Halpern), seen the 111 Berkley Street property, or even been informed about the price of the property. (*See* Pl. Dep. 84:14-16; 290:15-22; 293:3-5.) Adlerstein also promised to provide a tenant, renovate the property, and, eventually, sell the property on plaintiff's behalf. (*See id.* 45:16-23; 50:18-23.) Moreover, Adlerstein held himself out as an experienced and knowledgeable real estate investor, and plaintiff had no real estate experience. (*See id.* 47:7-15; 50:24-51:2.) In sum, a rational jury could find a fiduciary relationship of trust and confidence existed between plaintiff and Adlerstein because plaintiff claims she relied on Adlerstein for virtually all aspects of her real estate investment. *See Banco De Desarrollo Agropecuario, S.A. v. Gibbs*, 709 F. Supp. 1302, 1307 & n.6 (S.D.N.Y. 1989) (explaining that determining whether a fiduciary relationship exists "'invariably requires a series of factual findings and generally rests with the finder of fact, i.e., the jury at trial.'" (quoting *United States v. Reed*, 601 F.Supp. 685, 705 (S.D.N.Y.), *rev'd on other grounds*, 773 F.2d 477 (2d Cir.1985))).

Further, a rational jury could find that Adlerstein breached his fiduciary duty by making misrepresentations regarding the mortgage,[17] not providing full disclosure about the payments he was receiving from the October 2006 sale, and generally engaging in self-dealing.

There is also evidence from which a rational jury could find that Pecorale knew about Adlerstein's alleged breach of fiduciary duty and provided substantial assistance. Pecorale signed a $21,567.52 check made out to Adlerstein, allegedly based on the "seller's concession" at the closing. Pecorale also signed checks for $6,000 and $6,567.53 to Steven Green, one of Adlerstein's business partners. (Pecorale Dep. 132:23-134:18; Pl. Dep. 138:11-19.) Plaintiff testified that she did not approve these payments and was unaware of them.[18] (Pl. Dep. 136:9-138:22.)

Additionally, Pecorale's office also prepared two "HUD-1 statements" in connection with the October 2006 transaction. (*See* Pecorale Dep. 127:10-23.) Federal law requires that the lender provide the borrower with these statements *at* or *before* closing and that the statement "conspicuously and clearly itemize all charges imposed upon the borrower and all charges imposed upon the seller in connection with the settlement." 12 U.S.C. § 2603(b); *see also Bloom v. Martin*, 77 F.3d 318, 320 (9th Cir. 1996) ("RESPA requires mortgage lenders to disclose the costs associated with real estate closings." ). Here,

---

[17] (*See, e.g.*, Pl. Dep. 56:19-57:4; 59:9-16.)

[18] At oral argument, although counsel for Pecorale reiterated his client's position that the $21,567.52 check was made out to Adlerstein based on the "seller's concession," the attorney for the seller testified at his deposition that he did not authorize that check to be written and had no idea why it would be written. (O'Brien Dep. 46:10-15; 58:11-59:12; 62:17-65:4) Moreover, counsel for Pecorale had no explanation at oral argument as to why Pecorale, as the attorney for the lender, would have written two checks to Green or why he would have had a prviate, one-hour meeting with Adlerstein on October 10, 2006, according to plaintiff.

the HUD-1 statements contain allegedly false information regarding the location of the closing,[19] and there are discrepancies between the monetary amounts listed in the HUD-1 statements and the amounts in other documents used in the transaction. Finally, plaintiff testified that Adlerstein and Pecorale spoke on the phone "a lot," and Zaretsky testified that Adlerstein and Pecorale had a private hour-long meeting on October 10, 2006. (Pl Dep. 297:8-299:9; Zaretsky Dep. 119:7-14.). Taking these facts together and viewing them in a light most favorable to plaintiff, a rational jury could find that Pecorale was more than a passive bystander in Adlerstein's alleged breach of fiduciary duty and, instead, knew of it and actively provided substantial assistance. *Cf. Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 652 F. Supp. 2d 495, 511 (S.D.N.Y. 2009) (denying bank's motion for summary judgment on aiding and abetting hedge fund manager's alleged breach of fiduciary duty because bank recorded information showing "'too good to be true'" gains by the funds; prepared accounting statements reflecting these gains that were, in turn, used by auditors and administrators; and made other statements concealing the fraud). *See generally Twenty First Century L.P.I. v. LaBianca*, 19 F. Supp. 2d 35, 42 (E.D.N.Y. 1998) (denying summary judgment to defendant on aiding and abetting breach of fiduciary duty claim because, under New Jersey law, defendant's intentional submission of false invoices to plaintiff and paying kickbacks to plaintiff's employees constituted substantial assistance). Finally, a rational jury could also conclude that plaintiff suffered damages—specifically the loss of her investment on 111 Berkley Street—because of Adlerstein's breach of fiduciary duty. Thus,

Pecorale's motion for summary judgment on the breach of fiduciary duty claim is denied.

b. Aiding and Abetting Fraud

The elements of aiding and abetting fraud are similar to the elements of aiding and abetting a breach of fiduciary duty. For Pecorale to be liable for aiding and abetting fraud, plaintiff must show: (1) the existence of a fraud; (2) Pecorale's knowledge of the fraud; and (3) that Pecorale provided "substantial assistance to advance the fraud's commission." *See Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 292 (2d Cir. 2006).

For substantially the same reasons as set forth above, the Court concludes that there are genuine issues of material fact regarding whether Pecorale aided and abetted a fraud by Adlerstein.

Here, a rational jury could find the first element met. Plaintiff testified that Adlerstein falsely told her that he would be a co-mortgagor. Additionally, a rational jury could find that plaintiff relied on these statements in deciding to purchase 111 Berkley Street. Finally, a rational jury could conclude that plaintiff suffered damages as a result of these statements because she eventually became unable to make the mortgage payments, and Adlerstein was unable to assist her.

As stated in the context of the aiding and abetting breach of fiduciary duty claim against Pecorale, a rational jury could also find that Pecorale knew of and provided substantial assistance to the fraud. *Cf. Cain*, 2007 WL 2859681, at *23 ("If plaintiffs establish that there was a scheme to defraud plaintiffs of their property, [defendants'] review and certification of a false HUD-1

---

[19] (*See* Pecorale Dep. 130:8-12.)

Settlement Statement . . . and the inclusion in the loan file of the fraudulent . . . check would, if proven to the jury's satisfaction, constitute substantial assistance for purposes of aiding and abetting liability."); *Phifer v. Home Savers Consulting Corp.*, No. 06 CV 3841(JG), 2007 WL 295605, at *4 (E.D.N.Y. Jan. 30, 2007) ("[Defendant] cannot disclaim [aiding and abetting] liability on the ground that it was the financier, not the spokesman, of the fraud."); *Oei v. Citibank, N.A.*, 957 F. Supp. 492, 520 (S.D.N.Y. 1997) (document discrepancies and other circumstantial evidence supported claim that defendant knew of fraud and affirmative misrepresentations supported substantial assistance element). *See generally Banks v. Consumer Home Mortgage.*, No. 01-CV-8508 (ILG), 2003 WL 21251584, at *11 (E.D.N.Y. Mar. 28, 2003) (denying, in context of an allegedly fraudulent scheme to sell homes, lender's attorney's motion to dismiss aiding and abetting fraud claim because "the aider and abettor allegedly was aware that he would be enlisted by the principal fraudfeasors to deceive the victims and he knowingly did assist" by providing documents to plaintiffs at closing). Thus, Pecorale's motion for summary judgment on the fraud claim is denied.

* * *

In sum, defendant Halpern asserts that plaintiff's implausible version of the facts should be rejected because it is inconsistent with the documentation and is an "attempt[s] to blame her lawyer for her own illicit conduct in obtaining mortgage loans under false pretenses." (Halpern's Reply Memorandum of Law, at 1.) Defendant Pecorale similarly argues that plaintiff's claims have no merit and "[t]he defendants should not be transmuted into insurers of plaintiff's failed investment." (Pecorale Reply Memorandum of Law, at 3.) However, the Court cannot weigh the evidence and attempt to resolve these credibility issues on summary judgment. *See, e.g.*, *Vital v. Interfaith Med. Center,* 168 F.3d 615, 622 (2d Cir. 1999) ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment. Any weighing of the evidence is the prerogative of the finder of fact, not an exercise for the court on summary judgment."); *see also Curry v. City of Syracuse,* 316 F.3d 324, 333 (2d Cir. 2003) ("[I]t is well established that '[c]redibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment.'") (quoting *Fischl v. Armitage*, 128 F.3d 50, 55-56 (2d Cir. 1997)); *accord Huff v. Uarco, Inc.*, 122 F.3d 374, 385-86 (7th Cir. 1997) ("We do not imply that plaintiffs have a strong case but rather only that they have enough of a case to go to a jury."). Thus, although plaintiff has yet to prove her claims against these defendants, plaintiff has presented sufficient evidence, when the evidence is viewed in the light most favorable to plaintiff (including fully crediting plaintiff's testimony and drawing all reasonable inferences in plaintiff's favor) to create genuine issues of fact on these claims that survive summary judgment and must be resolved by a jury.

B. N.Y. General Business Law § 349 Claim

The Court grants defendants' motion for summary judgment on plaintiff's claim under the New York consumer protection statute, N.Y. Gen. Bus. Law § 349. As set forth below, even construing the evidence most favorably to the non-moving party, plaintiff cannot demonstrate as a matter of law that the alleged conduct by defendants was "consumer oriented," as required under New York law.

To establish defendants' liability under § 349, "(1) the defendant[s'] challenged acts or practices must have been directed at consumers, (2) the acts or practices must have been misleading in a material way, and (3) the plaintiff must have sustained injury as a result." *Cohen v. JP Morgan & Chase Co.*, 498 F.3d 111, 126 (2d Cir. 2007).

Thus, as a threshold matter, plaintiff must establish that defendants' conduct was consumer oriented. *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 744 (N.Y. 1995); *see also Vitolo v. Mentor H/S, Inc.*, No. 06-CV-1794, 213 F. App'x. 16, 17 (2d Cir. Jan. 3, 2007) (summary order) (citing *Stutman v. Chem. Bank*, 731 N.E.2d 608, 611 (N.Y. 2000))). To show that the alleged conduct was consumer oriented, plaintiff "must demonstrate that the acts or practices have a broad[ ] impact on consumers at large." *Oswego Laborers'*, 647 N.E.2d at 745 (finding that conduct related to bank's policies regarding savings accounts were consumer oriented because policy applied to "any customer entering the bank to open a savings account"); *see, e.g.*, *Riordan v. Nationwide Mut. Fire Ins. Co.*, 977 F.2d 47, 51-53 (2d Cir. 1992) (holding § 349 applicable to insurers where plaintiffs demonstrated that similar practices had been employed by defendant against multiple insureds); *cf. N.Y. Univ v. Cont'l Ins. Co.*, 662 N.E.2d 763, 770 (N.Y. 1995) (declining to find § 349 violation where insurance policy had been negotiated and was "tailored" to meet the needs of the plaintiff, a large private university); *Banc of America Comm. Fin Corp. v. Issacharoff*, 188 Misc.2d 790, 798 (Sup. Ct. 2000) (finding § 349 claim not "consumer oriented" because "allegations of deceptive acts indicate that the conduct at issue was particular to [counterclaim plaintiff] and not a type of standard practice.").

Thus, when courts have found § 349 applicable in the context of real estate transactions, they have usually done so where defendant published advertisements or otherwise solicited the general public. *See, e.g.*, *DeAngelis v. Timberpeg East, Inc.*, 858 N.Y.S.2d 410, 414 (finding that complaint adequately pled "consumer-oriented" element of § 349 claim because it alleged that defendant "represent[ed] itself, through an advertisement disseminated to the public in a regional magazine, flyers and open houses, as the purveyor of a 'package' of products and services necessary to provide a completed Timberpeg home"); *Bd. of Managers of Bayberry Greens Condominium v. Bayberry Green Assoc.*, 571 N.Y.S.2d 496, 497 (App. Div. 1991) (finding complaint adequately pled claim under § 349 because it "alleged deceptive practices by the appellants in *the advertisement and sale* of the condominium units") (emphasis added). *See generally Polonetsky v. Better Homes Depot, Inc.*, 760 N.E.2d 1274, 1277-78 (N.Y. 2001) (finding New York City consumer protection statute applicable where defendants "offered a 'package' of services" that included the sale of real estate and that was advertised in newspapers and through flyers handed out at subway stations). Conversely, where the defendant did not engage in solicitation of the general public, § 349 will not apply. *See, e.g.*, *Teller v. Bill Hayes, Ltd.*, 630 N.Y.S.2d 769, 774 (App. Div. 1995) (finding home improvement contract not consumer oriented because, *inter alia*, "[t]he parties met while the plaintiff was walking her dog. There was no solicitation by the defendants, and no indication that they possessed or acted upon any defrauding intent. The plaintiff has wholly failed to demonstrate that the defendants utilized any fraudulent advertisements or any other false solicitations which might induce other homeowners to

succumb to defendants' alleged fraud.").

In this case, plaintiff has brought forward no evidence from which a rational jury could conclude that defendants' actions were consumer oriented. Instead, Adlerstein's alleged scheme—using young people as straw buyers to obtain fraudulent mortgages—appears from the current record to have been directed at plaintiff, her family, and her friends. Adlerstein was plaintiff's mother's long-time boyfriend. The initial discussion regarding the potential real estate investment occurred while plaintiff was visiting her family. (*See* Pl. Dep. 240:19-244:6; 263:24-264:24; Pl. Aff. ¶ 5.) The other individuals solicited by Adlerstein included Zaretsky (plaintiff's boyfriend) plaintiff's sisters, plaintiff's sister's boyfriend, and a family friend. Indeed, plaintiff has stated that she asked Adlerstein "why he was recruiting *my family and friends*." (Pl. Aff. ¶ 12 (emphasis added).). Even assuming Halpern and Pecorale were involved in all these transactions and that they (and Adlerstein) employed similar deceptive practices as they are alleged to have used here, there is no evidence that these practices impacted the general public. *Cf. Infostar Inc. v. Worcester Ins. Co.*, 924 F. Supp. 25, 29 (S.D.N.Y. 1996) (granting defendant summary judgment on § 349 claim because "[t]he mere fact that other consumers have purchased similar policies and that some of them, presumably, have dealt with defendants' claims departments is not, standing alone, sufficient to meet [the consumer-oriented standard]. Plaintiffs have failed to present any evidence of specific facts from which a reasonable jury could conclude that the actions of [defendants] affected or could affect the general public."); *see also Phillips v. Better Homes Depot, Inc.*, No. 02 Civ. 1168 (ERK), 2003 WL 25867736, at *21 (E.D.N.Y. Nov. 12, 2003) (denying defendants summary judgment on § 349 claim

because, *inter alia*, plaintiff "alleged a standard pattern of deception" by defendants and "presented evidence to support such allegations."). Moreover, the fact that Adlerstein is alleged to have frequently "flipped" houses does not establish this element without evidence that he employed, in these other transactions, deceptive practices similar to the ones alleged here. In sum, plaintiff has not met her burden on summary judgment to show the alleged practices were "consumer oriented." Therefore, the Court grants summary judgment to defendants Halpern and Pecorale on the § 349 claim.

## IV. HALPERN'S CROSS-CLAIMS AGAINST PECORALE

Defendant Pecorale also moves for summary judgment on defendant Halpern's cross-claims for indemnification and contribution.

As the Second Circuit has noted, New York law "allows for full indemnification or proportionate contribution among joint tortfeasors, even where the party seeking indemnity or contribution is held liable for a breach of a nondelegable duty." *Robinson v. Shapiro*, 646 F.2d 734, 739 (2d Cir. 1981) (citations omitted). "An action for contribution may be maintained between concurrent, successive, independent, alternative, and even intentional tort-feasors, who have caused the 'same injury' to plaintiff." *LNC Invs., Inc. v. First Fidelity Bank, Nat. Assoc.*, 935 F. Supp. 1333, 1346 (S.D.N.Y. 1996) (citing *Bd. of Ed. v. Sargent, Webster, Crenshaw, & Folley*, 517 N.E.2d 1360, 1364 (N.Y. 1987) and *Nassau Roofing & Sheet Metal Co. v. Facilities Development Co.*, 523 N.E.2d 803, 805 (N.Y. 1988) (internal quotations omitted)). However,

indemnity is different than contribution because it involves vicarious liability:

> The right of contribution arises among several tort-feasors who share culpability for an injury to the plaintiff and whose liability may be equitably apportioned according to fault. Indemnity, however, flows from either a contractual or other relationship between the actual wrongdoer and another, such as that of employee and employer, and involves a complete shifting of the loss.

*Riviello v. Waldron*, 47 N.Y.2d 297, 306 (1979) (internal citations omitted); *see also Durable Mfg. Co. v. Goodyear Tire & Rubber Co.*, 992 F. Supp. 657, 660 (S.D.N.Y. 1998) ("[C]ontribution involves joint tortfeasors whereas indemnification involves vicarious liability."); *accord Sherleigh Assocs. Inc. v. Patron Systems, Inc.*, No. 04 Civ. 907 JFK, 2005 WL 1902844, at *2-3 (S.D.N.Y. Aug. 9, 2005) (explaining distinction between contribution and indemnification).

In the instant case, there is no evidence of a contractual relationship between defendants Halpern and Pecorale, nor is there any evidence of any other type of relationship between the two that would provide a basis for indemnification. Therefore, summary judgment on Halpern's cross-claims for contractual and common-law indemnification against defendant Pecorale is warranted. *See, e.g.*, *Sherleigh*, 2005 WL 1902844, at *3 (concluding that no relationship existed between two defendants that could give rise to a viable indemnification claim).

However, there are disputed issues of fact as to whether defendants Halpern and Pecorale committed a tort against plaintiff and, if so, the respective responsibility of each defendant for any damages proven by plaintiff. Therefore, summary judgment on defendant Halpern's cross-claim for contribution against Pecorale is unwarranted. *See, e.g.*, *Adeyinka v. Yankee Fiber Control, Inc.*, 564 F. Supp. 2d 265, 288-89 (S.D.N.Y. 2008) (denying summary judgment on, among other things, cross-claim for contribution).

## V. CONCLUSION

For the foregoing reasons, the Court denies the motions of defendants Halpern and Pecorale for summary judgment on plaintiff's fraud and breach of fiduciary duty claims but grants the motions on plaintiff's claim under § 349 of the New York General Business Law. The Court also denies defendant Pecorale's motion for summary judgment on defendant Halpern's cross-claim for contribution, but grants Pecorale's motion on defendant Halpern's cross-claims for contractual and common law indemnification.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: February 19, 2010
Central Islip, New York

\* \* \*

Attorney for plaintiff is Mario DeRossi, Stern and DeRossi, LLP, One Old Country Road, Suite 420, Carle Place, NY, 11514. The attorneys for defendant Pecorale are A.

Michael Furman and Bain R. Loucks, Furman Kornfield and Brennan, LLP, 545 Fifth Avenue, New York, NY 10017. Attorney for defendant Halpern is Noah Nunberg, L'Abbate, Balkan, Colavita and Contini, LLP, 1001 Franklin Avenue, Garden City, NY 11530.